**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| "Baby L.," a minor, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> Dr. MARK ESPER, in his official capacity as Secretary for the U.S. Department of Defense et al., <br><br> *Defendants*. | **Civil Action No. 3:20-cv-9** <br><br> **FILED UNDER SEAL** |

**PROPOSED MEMORIALIZATION OF COURT'S FEBRUARY 26, 2020 ORDER**

This matter is before the Court on the plaintiffs' motion for a temporary restraining order. Plaintiffs DOE 1 and DOE 2, a married couple, filed this action and their request for a TRO, initially under seal, on February 26, 2020, seeking emergency relief that would stop the U.S. Department of Defense from handing over "Baby L," an orphaned infant child who had been found by U.S. forces during a military operation in a foreign country and had then received medical care at a U.S. military hospital in that country, to the government of that country. Plaintiffs described urgent time considerations in that the U.S. Government planned to transport Baby L from the military hospital on the morning of February 27, 2020. Following plaintiffs' 1:00 p.m. filing, the Court convened a sealed telephonic hearing at 3:30 p.m. that afternoon and issued an oral ruling denying the TRO. The Court now memorializes its ruling in this written order as follows:

As the parties seeking emergency relief from the Court, plaintiffs must meet the standard articulated by the Supreme Court in *Winter v. Natural Resources Defense Council,*

1

*Inc.*, 555 U.S. 7 (2008), applicable to motions for preliminary injunctions and TROs. Plaintiffs must show (1) a likelihood of success on the merits, (2) that plaintiffs are likely to suffer irreparable harm absent the TRO, (3) that the balance of equities tips in plaintiffs' favor, and (4) that issuing the TRO is in the public interest. *Id*. at 20. Upon consideration of the governing law, arguments, and submissions, the Court denies plaintiffs' request for a temporary restraining order. The Court does not find that plaintiffs have established a likelihood of success on the merits, nor that the balance of equities tips in favor of the plaintiff. The Court also does not believe the TRO is necessarily in the public interest.

Plaintiffs seek emergency relief in the form of an order that would prohibit the Government from transferring Baby L to the custody of the foreign government, for reunification with her next of kin, without plaintiffs' consent. According to plaintiffs, they seek to ensure that any purported relative of Baby L has been properly vetted before she is transferred to their custody. For its part, the Government has emphasized that the foreign government has formally requested the child's return and there is no basis under international law for the United States to refuse to comply with that request; that the foreign government has determined that the child is a citizen of that country and has identified the child's relatives; and that the foreign government is satisfied that the relatives are legitimate after following its own vetting procedures, as it is entitled to do.

Plaintiffs' asserted right to care for Baby L arises from two state court orders. Plaintiffs explained at the hearing and in their filings that, in light of Baby L's injuries at the time she was found, she received medical care at a U.S. military hospital, where DOE 1 formed a bond with the child. DOE 1 then began to advocate on the child's behalf, with the aim of bringing her to the United States for further medical treatment. DOE 1 and his

wife also sought legal custody of the child in state court. A state court issued an order granting the plaintiffs legal custody of Baby L on November 6, 2019. A state court also granted plaintiffs' petition to issue a Certificate of Foreign Birth for Baby L on November 8, 2019.

But as the Government articulated at the hearing, these state court orders by their express terms reflect an assumption that the foreign government would "issue a medical/responsibility/jurisdiction waiver to consent to the U.S. acting in the best interest of the child as a refugee requesting asylum." The state court's custody order indicated that a written copy of this waiver would be provided to the court in a matter of days.

However, the foreign government did not in fact issue any such waiver of jurisdiction. Instead, as counsel for the Government explained at the hearing, the foreign government had expressly requested that Baby L be returned to its care so that she could be reunited with her next of kin. The Government also pointed to a state statute, which requires that, before a child's custody determination is made, notice and an opportunity to be heard be given to "any person having physical custody of child." The Government asserted that, as custodian of Baby L at the time, the Department of Defense should have been formally served with and provided notice of the proceedings in the state court. That was not done.

The state court orders were foundational to plaintiffs' asserted authority to care for Baby L. Given the plain terms of the state court orders and the lack of service and notice upon DoD, the Court finds that plaintiffs have not met their burden of establishing a likelihood of success on the merits.

Plaintiffs' likelihood of success on the merits is further diminished by their failure

to proceed through proper channels. As the Government articulated, plaintiffs had two alternative avenues to pursuing this 11th hour TRO. First, they should have obtained the consent of the foreign government to the transfer of Baby L to plaintiffs' custody. While plaintiffs' counsel conceded that such consent was required and had been sought, it ultimately was not obtained. Second, plaintiffs' counsel stated that an application for a parole visa for this child to enter the U.S. had been submitted, which, again, plaintiffs conceded was not granted. Plaintiffs' failure to succeed under either of these two avenues demonstrates that they lack any legal authority to bring Baby L to the United States.

Lastly, the Court cannot overlook the international ramifications of the Court granting the request for temporary restraining order. The State Department has ably articulated the U.S. government's foreign policy interest and has argued relations with the foreign government are significantly implicated by this case. It is the role of the State Department and not private litigants or the Court to determine the foreign policy interest of the United States.

For these reasons, plaintiffs' motion for a TRO is DENIED.

SO ORDERED.

Dated: _____                    _____
                                        Judge Norman K. Moon