IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| "Baby L." a minor, by and through her legal guardians and next friends, DOE 1 and DOE 2, DOE 1, individually and as next friend of "Baby L.", and DOE 2, individually and as next friend of "Baby L." <br><br> *Plaintiffs*, <br><br> v. <br><br> Dr. MARK ESPER, in his official capacity as Secretary for the United States Department of Defense; MICHAEL POMPEO, in his official capacity as Secretary for the United States Department of State, DONNA WELTON, in her official capacity as Assistant Chief of Mission, United States Embassy ▮▮▮ (▮▮▮▮ DOE DEFENDANTS 1-20, in their official capacities, <br><br> *Defendants*. | Civil Action No. _____ <br><br><br> **PLAINTIFFS' MOTION FOR LEAVE TO PROCEED USING PSEUDONYMS, AND TO FILE AND PROCEED UNDER SEAL** |

**BACKGROUND**

This action involves Plaintiffs' claims against Defendants ESPER, POMPEO and WELTON for violation of Fifth and Fourteenth Amendment Due Process rights, and violations of the custody rights secured under court orders granted by a ▮▮▮▮ Juvenile and Domestic Relations court and a ▮▮▮▮ Circuit Court for a minor child, arising under ▮▮▮▮ implementation of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) for custody of a child pursuant to ▮▮▮▮ Code § ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

This litigation relates to the attempted transfer out of U.S custody of minor child Baby L., at the behest of Department of State ("DoS") actors, to an anonymous, un-vetted person with

likely ███ affiliations with the ███████████ (███ in an active ███ zone, in winter, without Plaintiffs knowledge or consent, and contrary to the objective best interests of Plaintiff's legal ward, Baby L. ("the Child"). The Child is an orphaned female infant of an ███ foreign fighter that had previously sustained a skull fracture and skull deformity, 2nd degree burns to the face and neck, fragmentation wounds, and a compound fracture of her femur during a U.S. combat operation against ███ terrorist leaders of the ███

## STATEMENT OF ISSUES

The issues in this motion are 1) whether the circumstances of this case warrant the use of pseudonyms by the plaintiffs given the factors applicable in the Fourth Circuit; 2) whether privacy or confidentiality concerns relating to the physical security of the Plaintiffs' and their three additional minor children ages 8, 5, and 2 years old in this case outweigh the presumption of openness for judicial proceedings; 3) whether the common law right of public access to judicial records and documents should be restricted due to competing interests that outweigh the public's right of access, and; 4) whether restricting the First Amendment right of public access to judicial records and documents in this case is necessitated by a compelling government interest, and the denial of such access is narrowly tailored to serve that interest.

## ARGUMENT TO PROCEED USING PSEUDONYMS

Though there is a presumption of openness for judicial proceedings, the Fourth Circuit has held that under appropriate circumstances, pseudonyms may be permitted when privacy or confidentiality concerns warrant anonymity. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). The Fourth Circuit identifies the role of the district court is to "…ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing

party." *CO. Doe v. Pub. Citizen,* 749 F.3d 246, 273-75 (4th Cir. 2014).

The Fourth Circuit identified the following five non-exhaustive factors for district courts to consider in deciding whether to allow a party to proceed anonymously:

> Whether the justification asserted by the requesting party is merely to avoid the annoyance or criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Jacobson*, 6 F.3d at 238.

Applying these five factors, district courts in the Fourth Circuit have granted the use of pseudonyms when necessary to protect the plaintiffs' anonymity. *See, e.g. Nelson v. Green*, No. 3:06cv00070, 2007 U.S. Dist. LEXIS 23125 (W.D. Va. Mar. 28, 2007) (granting use of pseudonyms to plaintiffs challenging a determination that the plaintiff sexually abused his daughter); *Yacovelli v. Moeser*, No. 1:02cv596, 2004 U.S. Dist. LEXIS (M.D.N.C. May 20, 2004) (granting use of pseudonyms in a challenge by students of University's orientation program as violating the Establishment Clause and the Free Exercise Clause).

In this case, each of the factors weighs heavily in the plaintiffs' favor.

**I.     The Justification Asserted by the Plaintiff is not Merely to Avoid Annoyance or Criticism**

In this case, plaintiff DOE 1 has aggressively advocated on behalf of Baby L. to the highest levels of the Executive Branch of the U.S. government, as well as to high levels of the Department of Defense and Department of State. If avoiding annoyance or criticism was a factor for the plaintiffs in this case, it would not have made it before this Court. Rather, the plaintiffs' desire is to protect their privacy interest in preserving their anonymity to the general public due to the sensitive nature of being the legal guardians of the ████████████████████; and to protect Plaintiff Baby L.'s This sensitive topic is intertwined in the security/safety concerns for the plaintiffs' household outlined below.

## II. Disclosing Plaintiffs' Identities will Place them, and Innocent Non-Parties, at Risk of Retaliatory Harm

The United States has been engaged in the Global War on Terror (GWOT) since the █ ███ (█ terrorist attacks on the World Trade Center Towers on September 11, 2001 (9/11). Since that time, international terrorist organizations have been utilizing open source information with increasing sophistication to target, or inspire others to target, high profile individuals in western nations for further terrorist attacks.

Sadly, the examples of actual and threatened attacks in western nations since 9/11 is exhaustive. Over the last two decades, a relevant sampling of threatened or actual terrorist attacks include the following:

In 2011, an █ affiliated website posted "…a potential hit list of targets that include names and photos of several U.S. officials and business leaders, calling for terrorists to target these Americans in their own homes."[1] This website contained "…40 specific names, 26 of them

---

[1] NBC News, New York, NY (2011). *Possible Al-Qaida Hit List Targets Specific Americans*
https://www.nbcnewyork.com/news/local/possible-al-qaida-hit-list-targets-specific-americans/1921027/

with photos attached, and they call for posting home addresses. One jihadist called for sending package bombs to any listed address as just one possibility." (*id*)

In January of 2015, seventeen people were killed in a series of terrorist attacks in Paris, France conducted by attackers who swore allegiance to "al-Qaeda in the Arabian Peninsula (AQAP)" and "Islamic State in Iraq and the Levant (ISIL)."[2] In this instance, the victims were specifically targeted because of their high profile role in publishing cartoons depicting the prophet Mohammed in the Charlie Hebdo publication. The attackers, while residing in France, were inspired by international terrorist groups outside of that country to conduct the attacks.

Also in 2015, a group claiming affiliation with ISIL posted the names and personal information of approximately 100 U.S. servicemembers, including their names and addresses, and urged attacks against them in an English language website.[3]

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

████. Thus, plaintiffs' concerns for anonymity in this case revolve around protecting the ████ ████████ in DOE 1's care from groups that have repeatedly demonstrated a willingness and ability to kill high profile individuals in western nations. Plaintiffs do not wish for their family to become the victims of a terrorist attack, or to be constantly at risk of a terrorist attack, in the

---

[2] Britannica (1 January 2020). Charlie Hebdo shooting https://www.britannica.com/event/Charlie-Hebdo-shooting

[3] NBC New, (2015). *Pro-ISIS Group Posts Names of U.S. Service Members Online* https://www.nbcnews.com/storyline/isis-terror/names-u-s-service-members-posted-online-group-claiming-ben328186

future.

### III. The Plaintiffs' and Innocent Non-Parties' Ages Weighs in Favor of Anonymity

As a minor, Baby L., aged six months, and the ███████████████████ ███████████████████████████████ and are not parties to this action, are particularly vulnerable to the "risk of retaliatory physical or mental harm." Recognizing the particular vulnerabilities of minors in litigation, the Federal Rules of Civil Procedure require that minors be identified by their initials. Fed. R. Civ. P. 5.2. This measure of protection is not sufficient in this case, however, due to the extreme harm to the plaintiffs should a terrorist organization decide to target the plaintiffs' household should their identities become known. Furthermore, identification of the legal guardian plaintiffs would easily expose the identity of the minor plaintiff, thereby exposing all plaintiffs to a significant risk of harassment and harm from international terrorist groups and those who sympathize with them.

### IV. Action is Against Government Party

"When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152 (M.D.N.C. May 20, 2004); S*ee, e.g. Doe v. Harlan County Indep. Sch. Dist.*, 96 F. Supp. 2d 667, 671 (E.D. Ky. 2000); *Doe v. N.C. Central Univ.*, 1999 U.S. Dist. LEXIS 9804, 1999 WL 1939248 at *4 (M.D.N.C. April 15, 1999). Furthermore, "the filing of an action challenging the constitutional validity of government activity generally involves no injury to the Government's reputation, while an action against a private party can result in damage to the defendant's reputation as well as economic harm." *Doe v. Mertin*, 219 F.R.D. 387, 394 (E.D. Va. 2004) (internal quotation marks and citations omitted). In this case, the defendant is the Department of State and officials of the DoS acting in their official capacity and, therefore, this factor favors the plaintiffs.

### V. There is Little Risk of Unfairness to the Opposing Party

Finally, the Department of State (DoS) will not be prejudiced by anonymity of the plaintiffs as they have actual knowledge of the identity of the plaintiffs. The plaintiffs are challenging the constitutionality of the DoS's actions, and not the personal conduct of any individual official. As a government agency, the DoS's decisions affect tens if not hundreds of thousands of U.S. citizens. Protestation, anonymous or public, through litigation or through dialogue, is due course for government bodies. Granting anonymity to the plaintiffs who challenge the DoS's decision has little risk of unfairness and prejudice to the defendants.

### ARGUMENT TO FILE UNDER SEAL

Under the First Amendment and common law, "court proceedings are presumptively open to public scrutiny." *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access." *Id*. at 265-66 (internal quotation marks omitted). Under the First Amendment, "access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Id*. at 266 (internal quotation marks omitted).

In the Fourth Circuit, a judicial officer is required to comply with three procedural requirements when presented with a motion to seal. *Sigal v. Creamer, Civil Action No. DKC 15-1735*, 2017 U.S. Dist. LEXIS 93589, at *2-3 (D. Md. June 19, 2017). These requirements include:

> (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary,

> it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

The Court of Appeals for the Fourth Circuit has identified the following non-exhaustive interests that justify curtailing the First Amendment presumption to access:

> The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury, *Press-Enter., Co.*, 464 U.S. at 510; protecting the privacy rights of trial participants such as victims or witnesses, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607-08, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); and risks to national security, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705 (6th Cir. 2002).

*Co. Doe v. Pub. Citizen*, 749 F.3d 246, 269

The interests in this case weigh in favor of the plaintiffs' motion to seal being granted. The interest in this case include the privacy rights of the plaintiffs and ▮▮▮▮ to be shielded from the foreseeable harm of being targeted for harassment or physical attack from international terrorist organizations like ▮▮▮▮ The demonstrated xenophobic disposition of these groups towards western nations combined with their proclivity to encourage or directly engage in terrorist attacks against high profile individuals militates towards protecting the ▮▮▮▮ involved in this case. Protection of the ▮▮▮▮ cannot be accomplished without protection of the adult plaintiffs, and these innocents are more akin to "victims or witnesses" and their privacy and safety should be protected as a compelling government interest.

In addition, there are significant aspects of national security intertwined in the motions and filings of this case, as they involve internal deliberations and requests to high levels of the

U.S. government, the Department of Defense, and the Department of State regarding a U.S. ███ operations. The circumstances of this case also relate to known to foreign governments that the U.S. has supported, such as that of ███ The precarious nature of that government, which currently controls only half of the country, could conceivably be impacted should international terrorist organizations publicize the circumstances of this case in regards to Baby L. If this were to happen, the national security could be impacted. If the government contest this case, then plaintiffs anticipate that this proceeding will also involve classified material currently in the possession of the government. Under the totality of the circumstances, the motion in this case should be granted, and the procedural requirements can be appropriately handled as outlined below.

I.  **Public Notice Can Be Satisfied While Protecting the Plaintiffs and Innocent Non-parties**

In this case, reserving a final ruling on the motion to seal for a hearing can that can be placed on the Court's docket will allow reasonable time for the public to oppose the plaintiff's motion to seal. In the interim, permitting the plaintiff's to proceed with their Complaint, Memo in Support of the Complain, and supporting exhibits under seal will appropriately balance the equities between the public's right to access judicial documents, the plaintiff's interest in safety, and the concern for national security.

II. **Less Drastic Alternatives Will Not Suffice to Protect the Interest**

Here, the plaintiff's filings are inextricably linked to the facts that make public access to this proceeding a significant risk to the interests expressed above. The interaction between high level decision making, the graphic account of collateral damage in a ███ the sensitive cultural concerns with extending protection and medical care to the orphaned daughter of an ███t, and the raw issues of commercial child sexual exploitation and the use

of child soldiers within the borders of a host nation to the U.S. military all weigh against less drastic alternative like redacting portions of the filings.

### III. The Court Can Make Specific Findings That Filing is Appropriate and Reject Less Drastic Alternatives

In this case, the Court can fulfill the procedural requirement and make specific findings for restricting access given the compelling interest outlined above, and the nature of the filings and supporting exhibits in this case.

### CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that their Motion for Leave to Use Pseudonyms, and to File Under Seal be granted, and that the Court permit the Complaint and supporting exhibits, Memo in support of the Complaint, and Memo is support of Motion to Proceed under Pseudonyms be filed under seal until the requisite time period to put the public on notice regarding the motion to seal has been fulfilled. This outcome will balance the equities in favor of protecting the minor Child plaintiff, the national security aspects of this case, and the privacy interests of the ███████████████████ in DOE 1 and DOE 2's ███████.

Respectfully submitted,

/s/
DOE 1

/s/
DOE 2

By:

/s/ Richard L. Mast
Richard L. Mast (VA Bar No. 80660)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
*court@lc.org*
(800) 671-1776
P.O. Box 11108
Lynchburg, VA 24506
(434) 592-7000
*Attorney for Plaintiff*
Dated: February 26, 2020