## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| "Baby L." a minor, by and through her legal guardians and next friends, DOE 1, and DOE 2, DOE 1, individually and as next friend of "Baby L." and DOE 2, individually and as next friend of "Baby L." <br><br> *Plaintiffs*, <br><br> v. <br><br> Dr. MARK ESPER, in his official capacity as Secretary for the United States Department of Defense; MICHAEL POMPEO, in his official capacity as Secretary for the United States Department of State, DONNA WELTON, in her official capacity as Assistant Chief of Mission, United States Embassy Kabul (USEK), DOE DEFENDANTS 1-20, in their official capacities, <br><br> *Defendants*. | Civil Action No. _____ |

## VERIFIED COMPLAINT AND
## PETITION FOR A TEMPORARY RESTRAINING ORDER

COME NOW Plaintiffs, "Baby L.," ("the Child") by and through her next friends and legal custodians, DOE 1 and DOE 2; DOE 1, individually and as next friend and legal custodian of Baby L., and DOE 2, individually and as next friend and legal custodian of Baby L. (collectively "Plaintiffs") by and through the undersigned counsel, and file this Complaint respectfully requesting that this Court issue a temporary restraining order requiring the Plaintiff's informed written consent to take any action that would materially impact the health, safety, or welfare of Baby L. by U.S. Department of Defense ("DoD"), Department of State ("DoS"), and their actors, agents, servants, employees, designees, assigns (or others agencies acting on its behalf or at its

behest) in violation of the best interests of the child and in violation of Baby L.'s status as a legal ward of a U.S. citizen, and a U.S. ██████████ namely, Dr. MARK ESPER, in his official capacity as Secretary for the United States Department of Defense; MICHAEL POMPEO, in his official capacity as Secretary for the United States Department of State; DONNA WELTON, in her official capacity as Assistant Chief of Mission, U.S. Embassy Kabul (USEK); and DOES 1-20, acting in concert with WELTON, in their official capacities, (collectively "Government Defendants"), in violation of clearly established civil and constitutional rights described herein. In support, Plaintiffs aver as follows:

## INTRODUCTION

1.      This Complaint centers on Plaintiffs DOE 1 and DOE 2's efforts to protect their legal ward from a complex situation that harbors significant foreseeable harm to the Child if Plaintiffs' right to ensure the health, safety, and welfare of the Child are not enforced. Baby L. is the orphaned infant daughter of an ██████ foreign fighter affiliated with the ██████████ ██████████ (██████ She was recovered off the battlefield in a U.S. Combat operation on 6 September 2019 with a ██████████████████████████████ ██ from a multiple barricaded shooter scenario.

2.      Her likely biological father detonated a suicide vest when U.S. forces breached his barricaded position while Baby L. was present in the room. Baby L.'s biological mother sustained multiple gunshot wounds from partner nation forces while reportedly resisting. U.S. medics treated the biological mother on scene, but she succumbed to her wounds, and died on the objective.

3.      Baby L.'s injuries are a result of the wall breach of a barricaded shooter (her likely biological father), multiple U.S. fragmentation grenades, and a suicide vest detonation in the ██

██████ compound where the objective of the operation - a ████████ leader of an ██████ foreign fighter group, was located.

4.       Based on the nature of the intelligence regarding the operation, the conduct of the ██████ fighters during combat, the eyewitness account of the sole surviving detainee, and the transient nature of the specific group in question along a known facilitation route to the ██████ border, in an area not controlled by the ██████ government, Baby L. was found to be a stateless minor in the custody of the U.S. by a ██████ Court in the Plaintiff's County of residence.

5.       Because no home state (or country, in this instance) could be determined for residency purposes based on the facts of Baby L.'s unique circumstances, the ██████ Court determined jurisdiction was proper under the Code of ██████ known as the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and permanent legal custody was granted to the Plaintiff's on 6 November 2019.

6.       Up to and since that date, there has been no party advocating for the best interests of Baby L. besides the Plaintiffs, and proposed dispositions of her case by Defendants involve significant, objectively dangerous, risks to the health, safety, and welfare of Baby L. These risks include the prevalence of commercial child sex and labor trafficking in ██████ including from government run facilities, the lack of available medical care within the country, and the danger of turning a child over to a member of an ████████ ████ group, particularly the ████ ██████████████████ This group is specifically known for training ██████ with their own ████ and local children for ██████ in ████████ ████ and ██████ and is noted for traveling to ██████ to wage ████ in family groups.

7.       For the reasons outlined above, this action is brought to ensure that the Best Interests of the Child standard controls all decisions regarding Baby L. Her young life has had an

3

exceedingly traumatic start, and safety, specialized medical care to correct her treatable ███████ injuries, and significant provisions for her welfare are available to her in the United States.

8.     Therefore, Plaintiffs bring this Complaint to challenge the flagrant violations of their clearly established, fundamental constitutional rights.

9.     Plaintiffs DOE 1 and DOE 2 have the fundamental constitutional right to protect the health, safety, and welfare of their court-ordered legal ward and ████████████ Baby L. These rights include the fundamental right to seek appropriate and readily available medical treatment protocols recommended by Baby L.'s primary care provider, and to exercise Baby L.'s ████████ health care patient rights without unjustified government intrusion and without interference from government entities who have goals and priorities other than the Best Interests of the Child.

10.    Plaintiff Baby L. has an equally fundamental right to be protected and cared for by her legal custodians in a safe, loving home environment, without unjustified government intrusion; she has the right to the best available medical treatment appropriate for her condition; and she has specific rights as a recognized ████████ of the DoD and a patient in the Military Health System.

## PARTIES

11.    Baby L. is a 6-month old stateless minor recovered off the battlefield in ████████ on 6 September 2019.

12.    DOE 1 and his wife DOE 2 are the sole legal custodians of Baby L. and residents of ████████ They seek a Temporary Restraining Order to prevent the Government Defendants from taking any action that materially impacts the health, safety, or welfare of Baby L. without the Plaintiff's informed written consent. Such actions include, but are not limited to, discharging Baby

L. from the Military Health System while she remains in  transferring Baby L. out of

U.S. custody, and advocating that other agencies transfer or discharge her, in blatant violation of

due process, the ▮▮▮▮ legal custody order, DOE 1's ▮▮▮▮▮▮ rights, and the due process,

equal protection, ▮▮▮▮▮▮ rights, and Military Health System Patient rights enjoyed by

Baby L.

     13.    DOE 1 and DOE 2 have been married since ▮▮▮▮▮ and are the ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮.

     14.    On November 6, 2019, DOE 1 and DOE 2 petitioned for and received sole legal

and physical custody of Baby L. before their home ▮▮▮▮ County's ▮▮▮▮▮▮▮

▮▮▮▮▮▮, while DOE 1 was in ▮▮▮▮ with Baby L., and DOE 2 was in ▮▮▮

(Exhibit C).

     15.    SECDEF Esper is the Secretary of the United States Department of Defense. He is

sued in his official capacity.

     16.    SECSTATE Pompeo is the Secretary of the United States Department of State. He

is sued in his official capacity.

     17.    Donna Welton is the Assistant Chief of Mission for U.S. Embassy Kabul. She is

sued in her official capacity.

**JURISDICTON**

     18.    This case arises under the Fifth and Fourteenth Amendments to the United States

Constitution, 42 U.S.C. § 1983, 20 U.S.C. § 1400 et. seq.

     19.    This Court has jurisdiction of this action by virtue of 28 U.S.C. §§ 1331, 1343, and

1367.

20.     Venue is proper in this Court by virtue of 28 U.S.C. § 1391(e)(1) because each Defendant is an officer or employee of the United States acting in his or her official capacity and under color of legal authority, and Plaintiffs reside in this judicial district.

21.     This Court is authorized to grant Plaintiffs' requested declaratory relief by virtue of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the temporary restraining order requested by Plaintiffs by virtue of Rule 65 of the Federal Rules of Civil Procedure.

22.     This Court has jurisdiction by virtue of 28 U.S.C. § 1367 over Plaintiffs' claims to exercising her DoD "Patient Rights," as outlined in Department of Defense Instruction (DoDI) 6000.14. **This DoDI is applicable "to the OSD, …the Combatant Commands, …and all other organizational entities within the DoD."** (Exhibit R).

23.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including reasonable attorneys' fees, by virtue of 28 U.S.C. § 1988.

## STATEMENT OF FACTS

### Background and Initial Diagnoses

24.     Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 23.

25.     Baby L. is a stateless minor child in the custody and care of the DoD; is a recognized ▮▮▮▮▮▮▮▮▮▮▮ with a DoD photo identification card, and is the legal ward of Plaintiff DOE 1, and his wife, DOE 2. (Exhibits B, C, and F)

26.     Baby L. has been a patient for over 160 days in the Military Health System (MHS) at the ▮▮▮▮▮▮▮▮▮▮▮ (▮▮▮ at ▮▮▮▮▮▮▮▮ ▮▮), ▮▮▮▮▮ (Exhibit G). This location is subject to sporadic rocket attacks and has suffered damage in the bombing of a

nearby hospital annex adjacent to the ▆▆▆▆ but outside the perimeter walls of BAF, on 11 December 2019 which reportedly killed two people and wounded over seventy people. (Exhibit Q).

27.    Baby L. was recovered off the ▆▆▆▆ on 6 September 2019 by U.S. Special Forces during a ▆▆▆▆▆▆ to capture or kill a ▆▆▆▆▆ ▆▆▆▆ Foreign Fighter associated with the ▆▆▆▆▆▆▆▆ (▆▆ also known as the ▆▆▆▆▆ ▆▆ (▆▆ or ▆▆▆▆▆▆▆▆▆ (▆▆ (Exhibits P, S, T, U, and X).

28.    The mission was initiated on the strength of intelligence indicating that the occupants of the targeted compounds where ▆▆▆▆▆▆▆ ▆▆ foreign fighters, as the U.S. government sent helicopters full of special operators to capture or kill the target of the mission, and the ▆▆▆ foreign fighters he was leading as a result of the strength of the classified intelligence in their possession. (Exhibit P).

29.    The nature of the engagement U.S. forces encountered on the night of 6 September 2019 involved the occupants of the targeted compounds utilizing suicide vests and fighting to the death despite being surrounded and given a chance to surrender. (Exhibit P)

30.    This conduct is consistent with ▆▆▆ foreign fighters, and is not typical of Taliban fighters in similar circumstances.

31.    After the engagement, the sole surviving detainee, an ▆▆▆ national, also confirmed that the occupants killed in the operation were "▆▆▆ known as the "black flags" in the region due to their allegiance to ▆▆▆ and its black flag. (see photos of ▆▆▆ "black flag" in Exhibits K and P recovered from the objective).

32.    During the operation, at the approximate age of ▆▆▆ on 6 September 2019, Baby L. suffered a ▆▆▆▆, a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆,

and ███████████████████████ during a multiple barricaded shooter scenario when U.S. Special Forces were clearing the ██████ compound associated with the ████ █████ ██ ██████ fighter leader from the ████████████████████ (Exhibit A, G, K, and P).

33.     Baby L.'s injuries were caused by a wall breach, fragmentation grenades, and a suicide vest detonating in her close proximity in the location where the objective of the raid, a ███████████ ██████ fighter leader, was expected to be. (Exhibit P).

34.     DOE 1 has personally reviewed over 150 pages of classified U.S. intelligence regarding the origins of the ██████████ foreign fighters occupying the ████████ compounds that were targeted, and these documents are summarized in the declassified mission summary regarding the operation where Baby L. was recovered, which was provided to the courts in custody proceedings. (Exhibits C, D, P).

35.     The sole surviving detainee from the objective, an █████ national associated with ██████████████ indicated the occupants of the compound where Baby L. was recovered were ████████████ foreign fighters that entered ████████ via ████████████ that these fighters moved every thirty days, and that they did not speak the local languages or associate with local ████████ The detainee also identified a photo of what appears to be ████████████████ ██ ██████ fighters as the persons who occupied the compound where Baby L. was recovered. (Exhibits K and P).

36.     Based on the documentary and testimonial evidence relating to the facts above, on 6 November 2019 and 8 November 2019, the minor child, Baby L. was found by a ████████ Juvenile and Domestic Relations Court (J&DR), and a ████████ Circuit Court to be a stateless minor in the custody of the United States. (Exhibits C and D).

37.    Both courts found that jurisdiction over Baby L. was proper under the Code of ████ sections known as the Uniform Child Custody and Jurisdiction Enforcement Act (UCCJEA) during the proceedings for legal custody on 6 November 2019, and for a petition for a ████ Record of Foreign Birth on 8 November, both of which were granted. (Exhibits C, D, and E).

38.    On 10 November 2019, Baby L. was issued her sole legal identity in the form of a ████ Record of Foreign Birth indicating her place of birth was "Unknown," her legal date of birth as 24 July 2019, and her legal name in accordance with the court orders from the J&DR Court and the Circuit Court. (Exhibits C, D, and E).

39.    On 13 November 2019, Baby L. was approved by the ████ of the ████ ████ ████ as a ████ and enrolled in the ████ ████ (████ (Exhibits F and L).

40.    Subsequently, Baby L. was enrolled in the DoD's TriCare Health Insurance program, and DOE 1 selected Dr. ████ ████ MD, as Baby L.'s Primary Care Manager (████ at the University of ████ (████ Children's Hospital due to her experience screening the medical needs of foreign children at ████ and her access to the ████ and ████ capabilities of the ████ Children's Hospital. (Exhibits H, I, L, M and N).

41.    On 11 December 2019, DOE 1 received Dr. ████ U.S. Treatment Plan, which is designed to address Baby L.'s ongoing medical needs upon her arrival in the United Sates. (Exhibit I).

42.    As a ████ and a patient in the Military Health System, Baby L. is eligible for medical evacuation via military aircraft.  (Exhibit M). Travel by eligible persons on

Military Aircraft does not require the notification or consent of ███████ under the Bilateral Security Agreement (BSA) (Exhibit X).

43.     Documentation related to these facts have been provided to United States Forces-███████ (███████ on or about their receipt, and they are and have been in the possession of both███████ and U.S. Embassy████ (█████ depending on which entity was taking "lead" on Baby L.'s case.

44.     On 14 January 2020, DOE 1 requested the DoD to medically evacuate Baby L. to the United States for her safety and follow on care utilizing Baby L.'s DoD Patient Rights to be treated in a safe environment, and to be treated by the physician of her choice (Dr. ████ ████ at an appropriate pediatric facility. This request cited Baby L.'s Patient Rights outlined in DoD Instruction 6000.14, and specifically highlighted the dangers to Baby L. remaining in█████ including the ███████████ that damaged Baby L.'s treatment facility. (Exhibits N and R).

45.     On 17, 21, and 23 January and 1 February 2020, DOE 1 requested via the Office of Mick Mulvaney, the Chief of Staff of the President of the United States, as well as the Office of the Vice President of the United States, that Baby L. be medically evacuated to the United States. This action was taken because ███████ and ████ had previously indicated through their inaction and conduct that they would not act "in the Best Interests of the Child." (Exhibit O).

46.     Specifically, when the Vice President of the United States Office initially intervened on Baby L.'s behalf in late October directing that efforts be made to bring Baby L. to the United States for treatment, the ████████████████ ████████ immediately arranged a meeting with ██████ personnel. This meeting was intended by ███████ personnel to convey to the ████ a classified briefing regarding the information in

DoD possession regarding Baby L.'s likely origin associated with the ▮▮▮▮ group known as the ▮▮▮▮▮▮▮▮ and the kinetic sources of her injuries. This meeting was also conducted prior to the written Comprehensive Health Assessment for Baby L., which was completed on 26 October 2019. (Exhibits L and O).

47.     However, ▮▮▮▮▮ secretly invited ▮▮▮ representatives to this initial meeting regarding Baby L. without informing DoD/▮▮▮ When the meeting began, the ▮▮▮ promptly asked the ▮▮▮ representatives how soon they could take custody of Baby L. in an effort to thwart any attempt to provide a path to the United States for Baby L., and directly insubordinate to the guidance received from the Vice President the day prior.

48.     DOE 1 was personally present in this meeting and witnessed the ▮▮▮ representative's response to the ▮▮▮ that ▮▮▮ did not have the capability to care for a child of Baby L.'s age and condition, despite the ▮▮ 'S urging them to take her. This lack of capacity is evidenced by Baby L.'s 160+ day stay as a patient in the Military Health System.

49.     Subsequently, ▮▮▮ requested ▮▮▮DoD to take lead on Baby L.'s Case, and indicated they would not assist ▮▮▮ in helping create a path to the United States, but would not hinder ▮▮▮ efforts to do so.

50.     On or about 25 November 2019, while ▮▮▮ was the lead agency in the effort to bring Baby L. to the United States, President ▮▮▮ ▮▮▮ indicated he would waive any claim over Baby L. in favor of her medical treatment in the United States within 48 hours, and preparations began to medically evacuate Baby L. via military aircraft.

51.     During the medical evacuation process, the International Committee of the Red Cross (ICRC) was informed of these events as a courtesy, as they had unsuccessfully helped search for a living family member since September 2019.

52.     Upon learning that Baby L. was to be medically evacuated to the United States within 48 hours, the ICRC asserted for the first time that they "might have located" a living family member. The timing and manner of this assertion was remarkable given the fact that ICRC had been involved in the search for living family members of Baby L. for over 10 weeks, and had been in regular communication with ███████ in regard to this topic. This assertion caused the cancellation of Baby L.'s pending medical evacuation.

53.     Upon learning details of the ICRC's assertion, including that the person(s) would remain anonymous, and refused to identify themselves to ███████ or the ███████ government, ███████ communicated that they would treat this information as a rumor until the person(s) was DNA tested and identified themselves.

54.     President ███ deferred a decision on waiving any claim that ███████ may have over the Child until after ████████████████████████████████████ ████████████████████████████████████ ████████████████████████

55.     In order to avoid further delays in Baby L.'s medical care in the United States, and to allow Baby L. to be moved to a safe and age appropriate medical facility in the United States, the Plaintiffs reached out to the ICRC on 29 November 2019, and requested that a phone conversation with the person(s) they asserted may be a family member and a translator be arranged in order to explain Baby L.'s medical needs and ████████████, and to seek an agreement where Baby L. could receive medical care in the United States.

56.     The ICRC refused to assist this request, directed Plaintiffs to ███ and Plaintiffs were eventually told through unofficial channels that the anonymous person(s) refused contact from anyone.

57.     This status quo of ██████DoD as the lead on Baby L. lasted until late December, when ████████ met with ██████████ ██████ Deputy Chief of Staff for Operations, and complained to ████████ about DOE 1's efforts to convey an offer of medical care for Baby L. through ICRC to any actual family members, and DOE 1's advocacy on Baby L.'s behalf to the Executive Branch. Since that intervention, ██████ resumed lead on Baby L.'s case. ████████████ responded to ██████████ complaint by ordering all personnel in ████████ to "not advocate for Baby L." and ordering that no ██████ personnel could speak about Baby L. to anyone outside of ██████ This last order was specifically geared at preventing DOE 1 from gaining information about the status of his ██████

58.     Without consent, or even notice to the Plaintiffs, on 10 February 2020, DOE 1 became aware that ████████ intended to allow Baby L. to be turned over to an anonymous person of unknown nationality through the ICRC without DNA testing, or any other form of vetting for ██████ affiliations. This was inherently dangerous for Baby L. given her age and condition, the middle of winter in a rural ██████ war zone, the well-documented dangers of child sex trafficking, abuse, and neglect in ████████ and the likelihood of Baby L. again becoming collateral damage in future U.S. strikes against ██████ ██████ groups like the ████████ ████████ These dangers have been repeatedly highlighted by Plaintiffs through Department of State, Department of Labor, and other reputable studies regarding child sexual abuse in ████████ to ████████ and ██████ (Exhibits L, N, and W).

59.     This anonymous person(s) is reportedly a third party national, and may not be an ██████ citizen, especially given the ███ practice of confiscating identity documents and passports, and assuming false identities. (Exhibits S and T).

60.     On 10 February, 2020, DOE 1, through counsel, prepared and sent a demand letter shortly after 1:00 PM EST, and prepared to file suit seeking an emergency Temporary Restraining Order prior to the 1:00 AM EST February 11, 2020 handover of Baby L. At approximately 11:45 PM on February 10, DOE 1 received unofficial word of a temporary hold placed on the transfer.

61.     On 26 February, 2020, Plaintiff DOEs received information that that ███████ ▮██████ again has arranged to allow Baby L. to be turned over to an anonymous person of unknown nationality through the ICRC without DNA testing, or any other form of vetting for ██████ affiliations, and again with no notice to Plaintiff DOEs or any discussion about their rights as legal custodians of Baby L. or the Best Interests of the Child. On information and belief, the transfer through ICRC to the unknown claimant will occur after midnight tonight on February 26, EST, or before 1:00 AM EST February 27, 2020 (approximately 10:30 AM ██████ time).

62.     The ████████████████████ is known to subject their children, including female children, to jihadi training to become child soldiers or "little mujahedeen." (Exhibits T and U). Specifically, "Another unique facet of ██████ bringing their families to join ███ in ███ is the presence of their children in war zones. ███ is proficient in training child soldiers, *which was a strength of* ████████████████████████ As part of their responsibilities to ███████████, ███ trains not only ███ children, but local children to be little ██████ (Emphasis added)." (Exhibit T).

63.     Currently, the ██████ has an interest in concealing the presence of ██████ foreign fighters within ██████████ as the rejection of safe havens for ██████ is a condition of a ████████████████████. (Exhibit X).

64.    ████    and the ███ specifically are known to confiscate the passport and identity papers of recruits, and provide new names, false identification papers, and false passports to their members in ███████ (Exhibits S and T).

65.    Even if the ICRC was aware that the anonymous person(s) in Baby L.'s case were ████████ the ICRC has an interest in maintaining the perception of ICRC neutrality in order to preserve their ability to visit all parts of a conflict zone, and have a dialog with all parties to a conflict. This includes the confidentiality of interactions with transnational, multi-jurisdictional, ████████ groups like ████████████ (Exhibit V). As a result, ICRC is extremely unlikely to disclose a person's affiliation with████████ to the U.S. or ████████ government personnel (as they also refused a private conversation offering medical care to Baby L).

66.    On information and belief, on or about 11 February, 2020, US Embassy ████ charge d'affairs ████████ called DoD and pressured DoD to release the DoD hold on Baby L., so State could transfer her out of US custody to an unvetted third party who is likely affiliated with transnational ████ groups such as ████████ and ██ If DoD releases the hold, State will transfer Baby L. to a third party claimant, where no DNA testing has been done to verify any familial ties, and no US intelligence vetting has been done to verify that the third party claimant has no████████ or other ████████ group ties. This is the latest in a pattern and practice of conduct inconsistent with basic principles of human rights, which flatly ignores the legal custody order making the DOEs the legal guardians/custodians of Baby L. and her their legal ward , and is objectively contrary to the best interests of the child in every respect.

67.    There is no urgent reason to remove Baby L. out of DoD custody without vetting a purported claimant, as evidenced by her 160 + days spent solely in the custody and care of the U.S.

68.        ▮▮▮▮▮ has Baby L.'s DNA profile on hand for the purpose of vetting any claims to a relationship with Baby L. This was in fact, the policy of ▮▮▮▮▮ prior to ▮▮▮▮ interference in late December. The U.S. military lab in ▮▮▮▮▮ can assess a familial relationship via DNA in approximately a four-day period. In addition, the U.S. has a robust intelligence collection presence in ▮▮▮▮▮ and can adequately vet claimant[s] once their identity is provided to the U.S.

69.     Failure to vet an anonymous person unreasonably exposes Baby L. to significant danger, including child sex trafficking, abuse, neglect, lack of access to medical care, and future U.S. air strikes or ground combat operations against ▮▮▮▮▮ ▮▮▮▮▮ groups like the ▮▮ who routinely expose their dependents to the hazards of combat with the U.S, including as human shields. (Exhibits L, M, N, and O).

70.     In addition to the dangers associated with being in the custody of an extremist ▮▮▮▮ death cult, a child turned over to the ▮▮▮▮▮ ▮▮ group is likely to be subject to ▮▮▮▮▮ ▮▮▮ training, including instruction in the use of small arms, improvised explosive devices, and suicide vests. (Exhibit T, U, and W). Thus, failure to vet an anonymous person also exposes Baby L. to the dangers of being used as a child soldier or child suicide bomber by a transnational, multi-jurisdictional, ▮▮▮▮▮ group known to exploit children for ▮▮▮▮▮ activities in ▮▮▮▮ ▮▮▮ and ▮▮▮▮▮ (Exhibits T, U, and W).

71.     Given that there have been two previous rumors of "claimants" with different stories and nationalities, one of which was proven false, and ended up being the sole detainee from the mission where Baby L. was recovered, and not a family member, a thorough vetting is the minimum reasonable step that must be accomplished to safeguard Baby L.

72.     Moreover, on 14 February, 2020, DOE 1 received an updated treatment plan from

Dr. ████  ████  the pediatrician who is ready and anxious to see Baby L. regarding her

documented medical needs, including ███████████████████████████████████

███████████████████████████████████████████. These

concerns from Baby L.'s pediatrician center around quality of life for Baby L., as well as routine

advanced screening to ensure complications from her injuries do not manifest (such as ███████

███████████  These concerns are not included in the trauma-centric evaluation that Baby

L. is "medically complete" i.e., not in danger of dying from her wounds if she were to be

discharged from the ████ (Exhibit H).

73.     Federal court jurisdiction over these matters enforcing the Plaintiff's rights to

ensure the health, safety, and welfare of Baby L. does not preclude actual family members'

standing to petition for custody of Baby L., and the ICRC will likely assist them to do so.

74.     Plaintiff's priority is to guarantee the safety, welfare, and ensure appropriate

medical care for Baby L. so that she can lead a normal life given her extremely dangerous and

traumatic start in life as the child of ████████ (Exhibits M and N).

75.     Baby L. has suffered threat of irreparable harm by being turned over to anonymous,

un-vetted third parties that will likely expose her to risk of abuse, neglect and death; or death as

collateral damage in a U.S. strike on ████████  ████████.

76.     As a result of the Defendant's ongoing plan to release her to said anonymous, un-

vetted third parties, Baby L. is suffering immediate and irreparable injury to her right to due

process, to her right to be free from gender-based bias and trafficking, to her right to receive

medical care in a safe, specialized medical facility which is already available to her, to her patient

rights under (DoDI) 6000.14, and to her fundamental liberties, including enjoying a safe, loving home environment with her legal guardians.

77.     As a result of these actions, the DOEs have been deprived and will be deprived of their fundamental rights to protect the health, safety, and welfare of their legal ward, their rights under the Fifth and Fourteenth Amendments, and their rights to Due Process.

78.     The actions of Defendants have caused a blatant and intentional intrusion into the DOEs' clearly established constitutional rights and have been the result of the policies and practices of DoS.

79.     The actions of Defendants have deprived Baby L. of her fundamental rights to liberty, due process, equal protection, and to her rights to free access to health care as a ███ ███████ and patient in the Military Health System.

## COUNT I – VIOLATION OF Baby L.'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### (Baby L. v. Government Defendants)

80.     Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 79.

81.     The Fourteenth Amendment to the United States Constitution protects all persons from being deprived in their life and liberty without due process of law.

82.     Baby L. has the fundamental right not to be deprived of her life without due process of law.

83.     Baby L. has the fundamental right not to be restrained in her liberty without due process of law.

84.     Baby L. has the fundamental right for her health, safety, and welfare to be protected by her legal guardians without unjustified government intrusion and interference.

85.     Baby L. has the right to the best available medical treatment appropriate for her condition and the right to have that decision made by her legal guardians without unnecessary government interference.

86.     ████████████████ has individually and personally facilitated the violations of Baby L.'s rights while Baby L. has been in DoD custody and is directly responsible for the violations alleged herein.

87.     Defendants have denied Baby L.'s rights to have her health, safety, and welfare be protected by her legal guardians, and to receive the best available medical treatment appropriate for her condition without unwarranted government intrusion.

88.     As a direct and proximate result of Defendants' actions, Baby L.'s health, safety, and welfare is in danger, and she has been unable to receive specialized medical treatment arranged for her in the United States.

WHEREFORE, Plaintiff Baby L. respectfully prays for relief against Defendants as hereinafter set forth in the prayer for relief.

**COUNT II - VIOLATION OF PLAINTIFF DOE 1 AND DOE 2's FUNDAMENTAL LEGAL GAURDIANSHIP RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**(DOE 1 and DOE 2 v. Government Defendants)**

89.     Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 88.

90.     The Fifth  and Fourteenth Amendments protect the fundamental rights of DOE 1 and DOE 2 to protect the health, safety, and welfare of their minor legal ward Baby L. without unnecessary government intrusion.

91. The DOEs' fundamental custodial rights include the fundamental right to choose appropriate medical treatment protocols recommended by their physicians consistent with the DoD Patient Bill of Rights, and to pick the location of her treatment without unjustified government intrusion and without opposition from government entities whose priorities diverge drastically from the Best Interests of the Child.

92. The DOEs are presumed to be fit legal custodians and presumed to make their decisions based on what it is in the best interest of their legal ward. They have also consistently advocated for the highest standard of care in regards to Baby L.

93. Government can only remove a child from the competent and loving care of her legal custodians when there are verified allegations and instances of substantial abuse such that the government can make a detailed and specific showing that the legal custodians have grievous shortcomings or handicaps that put the child's welfare at substantial risk of abuse or neglect.

94. The Department of Defense and Department of State, in enforcing policy choices made by ██████████, are not considering the Best Interests of the Child, which two courts in ██████ have done in assigning legal custody to DOE 1 and DOE 2.

95. Defendants' actions have violated the DOEs' fundamental right to protect the health, safety, and welfare of their legal ward, Baby L.

96. ██████████████ has individually and personally facilitated the violations of the DOEs' rights by facilitating the unlawful transfer of Baby L. to un-vetted third party nationals who have not been vetted for DNA connections to the Child and connections to ██████ ██████ groups know to abuse children, such as the ████████████████████████ and are directly responsible for the violations alleged herein.

97.    As a direct and proximate result of Defendants' gross violations of the DOEs' constitutional, custodial, and agency-established rights, including the right to direct the health care of their minor ward consistent with the Best Interests of the Child, the DOEs have suffered substantial deprivation of their liberties and significant damages.

98.    Finally, this morning, on 26 February, 2020, Plaintiff DOEs received information that that ████████████ again has arranged to allow Baby L. to be turned over to an anonymous person of unknown nationality through the ICRC without DNA testing, or any other form of vetting for ████ affiliations, and again with no notice to Plaintiff DOEs or any discussion about their rights as legal custodians of Baby L. or the Best Interests of the Child. On information and belief, the transfer to ICRC to the unknown claimant will occur after midnight on February 26, EST, or before ██████████████████████████████████).

WHEREFORE, Plaintiffs DOE 1 and DOE 2 respectfully pray for relief against Defendants as hereinafter set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    That this Court enter declaratory relief against all Defendants declaring that the actions of all Defendants deprive Baby L. of her liberty, due process, and equal protection rights and deprive the DOEs of their liberty, due process and custodial rights and have resulted in gross and blatant violations of the U.S. Constitution, applicable laws, and agency regulations without any justification under the law;

B.    That this Court issue the temporary restraining order requested by Plaintiffs; specifically, an order requiring the Plaintiff's informed written consent to take any action that would materially impact the health, safety, or welfare of Baby L. by Department of State and

Department of Defense actors (or others agencies acting on their behalf) in violation of the best interests of the child and in violation of Baby L.'s status as a legal ward of a U.S. citizen, and a ███████████████ ████████

        C.      That this Court award compensatory, statutory, and punitive damages; nominal damages in the amount of $1, and any other relief against all Defendants as is just and appropriate and to be determined at trial for the gross violations of Plaintiffs' clearly established constitutional and civil rights.

        D.      That this Court award Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, according to 42 U.S.C. §1988;

        E.      For any other and further relief that this Court deems just and proper.

        Respectfully submitted,

Dated: February 26, 2020

/s/ Richard L. Mast
Richard L. Mast (VA Bar No. 80660)
P.O. Box 11108
Lynchburg, VA 24506
(800) 671-1776
*court@lc.org*

*Counsel for Plaintiffs*

**VERIFICATION**

I declare under penalty of perjury that the factual allegations contained in the foregoing

Verified Complaint are true and correct.

Executed on this 26th day of February, 2020.


/s/ DOE 1
_____
Plaintiff DOE 1


/s/ DOE 2
_____
Plaintiff DOE 2