**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| Baby L. a minor, by and through her legal guardians and next friends, DOE 1, individually and as next friend of Baby L., and DOE 2, individually and as next friend of Baby L., <br><br> *Plaintiffs*, <br><br> v. <br><br> Dr. MARK ESPER, in his official capacity as Secretary for the United States Department of Defense; MICHAEL POMPEO, in his official capacity as Secretary for the United States Department of State, DONNA WELTON, in her official capacity as Assistant Chief of Mission, United States Embassy Kabul (USEK), DOE DEFENDANTS 1-20, in their official capacities, <br><br> *Defendants*. | Civil Action No. 3:20-cv-9 <br><br> FILED UNDER SEAL |

### PLAINTIFFS' RESPONSE TO ORDER FOR FURTHER BRIEFING ON MOTION TO PROCEED UNDER SEAL AND PROCEED UNDER PSEUDONYMS

Pursuant to this Court's Order of March 10, 2020, that "briefing on Plaintiff's Motion to Seal shall proceed regardless whether Plaintiffs state that they intend to continue to prosecute this action," to be filed by March 13, 2020, Plaintiffs submit the following regarding the maintenance of the pleadings under seal.

### PROCEDURAL BACKGROUND

Plaintiffs DOE 1 and DOE 2 have diligently worked to secure the welfare of minor child Baby L, since October 2019, where it became apparent that certain actors within the United States Government had no such interest. Plaintiffs sought resolution outside of the courts, in the interests

of judicial economy, acting under the reasonable belief that other U.S. Government actors would prevail in requiring action in the best interests of child Baby L., particularly where the full amount of information available to the Government could be considered by officials with authority to take the proper actions that considered the child's best interests, in light of her circumstances and serious medical needs.

When it became clear that nothing shy of litigation had a chance of protecting Baby L.'s best interests, including her Due Process and other rights, in addition to their own, Plaintiffs filed this action, together with their Motion to Proceed Under Seal and their TRO request, on February 26, 2020, seeking a means of restraining the Government from turning Baby L. over to anonymous claimants in the absence of a basic DNA test to verify familial ties, and a review by the Government of information within the Government's possession, to ensure that the claimants were not associated with ▇▇▇▇

The Court denied Plaintiffs' TRO request later that same day on February 26. On February 27, 2020, Plaintiffs learned that State Department had facilitated the transfer of Baby L to the International Committee of the Red Cross (ICRC), for ultimate transfer to an unknown location within ▇▇▇▇ to a person unknown to the U.S. Government, who had chosen to remain anonymous.

Plaintiffs' Counsel did not intentionally ignore the Court's Oral Order of February 27, 2020. Regretfully, Plaintiffs' Counsel first received notification of ECF activity in this matter on March 4, 2020, calendared a response on March 5, to be filed on March 11, per the Court's order of March 4. Counsel was surprised to learn that on February 27, the Court had ordered Plaintiffs to file a public version of the Motion to Seal within twenty-four hours. Counsel for Plaintiffs did not receive any notification of the Oral Order, ECF or otherwise, and first became aware of the

oversight relating to the February 27 order on March 10, when Defendants' counsel filed Defendant's Response to Plaintiff's Motion For Leave to Proceed Using Pseudonyms and Motion to Seal.[1]

## I. Proceeding Under Pseudonyms

With respect to the suggestion that the risk of harm due to exposure of Plaintiffs DOE 1's and DOE 2's identities in this matter is "speculative," the U.S. Government has warned ███ about any of their publicly available information being used for attacks by Islamist terror groups.

███

*Id.* at page 1.

---

[1] "ORDER; Plaintiffs' counsel is DIRECTED to file on the Court's public docket within 24 hours of the issuance of this Order a public version of his brief in support of 'Plaintiffs Motion for Leave to Proceed Using Pseudonyms and to File and Proceed Under Seal,' which Plaintiffs' counsel tendered to this Court and sought to have filed under seal. Entered by Senior Judge Norman K. Moon on 2/27/2020. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*"

███

The risks of terrorists using information about ▮▮▮▮ are also noted in the ▮



Here, Plaintiff DOE 1 in particular has vigorously advocated on behalf of Baby L, to prevent her from being given to anyone associated with ▮▮▮▮ Any information that places him at a given location in ▮▮▮▮ ▮▮▮▮▮▮▮▮ advocating on behalf of Baby L. is highly sensitive. In addition to his ▮▮▮▮, which maintains a particularly aggressive posture toward ▮▮▮ and associated groups, his personal actions to permanently deprive an ▮ ▮ associated group from ever obtaining custody of minor child Baby L. could subject him to further retaliation. This factor alone easily meets the standard set forth in *DOE v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014). *DOE* noted an exception to the Federal Rules of Civil Procedure which generally require that the identities of the parties to a case be disclosed. *See* Fed.R.Civ.P. 10(a) ( "The title of the complaint must name all the parties....").

"[I]n exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." *DOE v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (internal citations omitted).

---

4 ▮▮▮▮▮▮▮▮▮▮▮▮

*DOE v. Pub. Citizen* noted "the following nonexclusive factors for district courts to consider when determining whether a party should be permitted to litigate pseudonymously:

> Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether **identification poses a risk of retaliatory physical or mental harm to the requesting party** or even more critically, **to innocent nonparties**; the **ages of the person whose privacy interests are sought to be protected**; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* It is not speculative – but probable – that Plaintiffs will suffer a real risk of retaliatory physical or mental harm from ▮▮▮ for acting to deprive this and affiliated terrorist groups from the services of a "▮▮▮" recruit. The risk of harm is heightened in relation to Plaintiff DOEs' ▮▮▮, should their identities become known. The risk of harm to other "innocent nonparties," including minority religious and ethnic groups in countries where ▮▮▮ or other ▮▮▮ operate is well known. Such groups operate off of an entirely different moral calculus, and are known to use any excuse to kill or harm whomever they deem a worthy proxy for retaliation.

## II.     Maintenance Under Seal

This is not a case about a corporation's reputation. It is a case involving compelling circumstances and many pieces of a puzzle, which, if completed through publicly available information, can place at risk the Plaintiffs, ▮▮▮, and innocent nonparties who are squarely within reach of terrorist groups. It could impact the ▮▮▮ ▮▮▮ and elsewhere in the Middle East, and most importantly of all, it could impact national security. These are compelling interests supporting the maintenance of the pleadings and supporting exhibits under seal. "The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an

impartial jury, *Press–Enter., Co.,* 464 U.S. at 510, 104 S.Ct. 819; protecting the privacy rights of trial participants such as victims or witnesses, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607–08, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); and risks to national security, *United States v. Aref,* 533 F.3d 72, 83 (2d Cir.2008); *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 705 (6th Cir.2002)." *DOE v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014).

As the Second Circuit stated, "transparency must at times yield to more compelling interests. 'It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation.'" *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (*quoting Haig v. Agee,* 453 U.S. 280, 307 (1981).

Given the legitimate national-security concerns at play here and the nature of the underlying documents at issue, Plaintiffs contend that this case is one in which the totality of the circumstances militate in favor of sealed pleadings. In the alternative, if the Court grants the unopposed Motion to Proceed Under Pseudonyms, the Plaintiffs would not oppose Defendants' position that the following documents can remain filed unsealed without significant risk of identity disclosure and harm to national security:

1. Plaintiffs' Motion for Leave to Proceed Using Pseudonyms and to File and Proceed Under Seal
2. Defendant's documents marked 4-17 through 4-23 (Plaintiffs' Exhibits Q,R,S,T,U,V,W).

With these exceptions, the rest of the documents identified by Defendants should remain under seal, specifically including certain documents that Defendants suggest need not remain sealed, to wit:

1. 6-1 – Proposed Restraining Order. This document provides sufficient "pieces of the

puzzle" to give bad actors a road map on where to look for information that would identify DOEs 1 and 2.

2. Enclosure 3 (Dkt # 4-3) Certificate of Foreign Birth, because it identifies the state in which DOES 1 and 2 could be found.

3. The ▮▮▮, and any other references to the ▮ or which could assist in identifying DOE 1 ▮▮▮. These documents narrow the potential identity of DOE 1 with ▮▮▮.

This Court should not give unreasonable actors – including terrorists and other enemies of the United States – a clear picture of the entire puzzle, and how it might fit together. Nothing that is allowed out from under seal should reveal that DOE 1 ▮▮▮. The intertwined pleadings and documents replete with references could allow a bad actor to identify ▮▮▮. This would impact not only the identities of DOE 1 and 2; it would impact ▮▮▮, including Baby L. It could adversely impact international relations between the United States and ▮▮▮. It could attract the interests of ▮▮▮. The totality of the circumstances here militates in favor of sealing the entire case, not just pieces, within the Court's discretion.

Respectfully submitted,

Dated: March 11, 2020

/s/ Richard L. Mast
Richard L. Mast (VA Bar No. 80660)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
*court@lc.org; rmast@lc.org*
(800) 671-1776
P.O. Box 11108
Lynchburg, VA 24506
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2020, I caused a true and correct copy of the foregoing Response to Government's Submission pursuant to Order for Further Briefing to be electronically filed with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic notification system.

/s/ Richard L. Mast
Richard L. Mast (VA Bar No. 80660)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
*court@lc.org; rmast@lc.org*
(800) 671-1776
P.O. Box 11108
Lynchburg, VA 24506
*Attorney for Plaintiffs*